**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JACOB HAKALIR, | ) | No. 19 B 5093 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LOUIS WELTMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 19 A 817 |
| | ) | |
| JACOB HAKALIR, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## <u>MEMORANDUM OPINION</u>

Jacob Hakalir ran Jordan Equity Group, and his brother, Evan, ran Andy and Evan

Industries.  In 2017, Hakalir asked Louis Weltman to lend him money so that Evan's company

could invest in a line of children's clothing and Jordan could participate in a real estate venture.

Hakalir assured Weltman he could repay the loan.  Weltman made the loan.  But rather than use

the money as he said he would, Hakalir sent most of it to Evan.  Hakalir never repaid the loan.

Instead, he filed a chapter 7 bankruptcy case.

Before the court for ruling is Weltman's motion for summary judgment on his adversary

complaint against Hakalir.  Weltman alleges that Hakalir's debt is nondischargeable.

As explained below, the motion will be denied.  Weltman failed to serve Hakalir properly

with the required notice to pro se litigants explaining summary judgment procedure, and the

failure was prejudicial.  Weltman's motion also depends almost entirely on Hakalir's failure to

answer a request for admissions, and Weltman served the request improperly, leaving his motion

effectively unsupported.  But even if Weltman's facts had been both supported and undisputed,

they would not prove any of his non-dischargeability claims.

## I.  Jurisdiction

The court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334(b) and

the district court's Internal Operating Procedure 15(a).  This is a core proceeding.  28 U.S.C. §

157(b)(2)(I).

## II.  Background

### A.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (made applicable by Fed.

R. Bankr. P. 7056).  The court's task on summary judgment is to decide whether any material

dispute of fact requires a trial.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  In making

that decision, the court draws all reasonable inferences from the evidence in the non-movant's

favor.  *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 928 (7th Cir. 2020).

When the plaintiff is the movant, he has the initial burden of showing there are no factual

disputes.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet his burden with

many different materials – "depositions, documents, electronically stored information, affidavits

or declarations, stipulations . . . , admissions, interrogatory answers," and so on, Fed. R. Civ. P.

56(c)(1)(A) – as long as they are admissible in evidence.  *Widmar v. Sun Chem. Corp.*, 772 F.3d

457, 460 (7th Cir. 2014).

## B.  Summary Judgment Procedure

The bankruptcy court's local rules set out a procedure for summary judgment motions –
one essentially identical to the district court's procedure – designed to simplify decisions about
whether material facts are in dispute.  *See* L.R. 7056-1, 7056-2.  The movant must submit a
statement of facts consisting of short, numbered paragraphs with citations to evidence supporting
each statement.  L.R. 7056-1(B).  The nonmovant must then respond to each statement,
admitting or denying it, and including, "in the case of any disagreement," references to
supporting evidence.  L.R. 7056-2(A)(2)(a).  The nonmovant may also submit a statement
offering  additional facts, again with citations to supporting evidence.  L.R. 7056-2(A)(2)(b).

Responding to a statement of facts is straightforward.  *Maxwell v. Penn Media (In re
marchFirst, Inc.)*, Nos. 01 B 24742, 03 A 1141, 2010 WL 4027723, at *2 (Bankr. N.D. Ill. Oct.
14, 2010).  The respondent can admit facts, deny facts (with citations to evidence supporting the
denial), or suggest under Rule 56(d) that for specified reasons essential facts cannot be
presented.  *Id.*  He can also object that the evidence supporting a particular fact is inadmissible.
*Id.*  But "[t]here are no other options."  *Id.*  Responses of any other kind admit the facts stated.
*Id.*; *see also* L.R. 7056-1(C), 7056-2(B).

## III.  Discussion

Weltman's motion will be denied.  Although Hakalir failed to respond to Weltman's
statement of facts as the local rules required (since he cited no evidence for the facts he
disputed), Hakalir is pro se.  He was therefore entitled under L.R. 7056-3 to a notice explaining
summary judgment procedure.  Weltman served the notice, but he did so improperly, making the
notice he served a nullity.  His failure to serve the notice prejudiced Hakalir.  To support his
motion, Weltman also relied heavily on facts he says Hakalir admitted when he failed to respond

to a request to admit.  That request, too, Weltman served improperly, so Hakalir's failure to respond admitted nothing.  Setting these problems aside, finally, and assuming all of the motion's facts were both supported and undisputed, they would not entitle Weltman to judgment as a matter of law.

## A.  Service of the L.R. 7056-3 Notice

Weltman's motion fails right out of the gate because he failed to serve Hakalir with the required notice describing summary judgment procedure in terms he could understand.

In answering the motion, Hakalir did not file a separate response under L.R. 7056-2 to Weltman's facts and a memorandum of law.  He submitted a single, four-page document entitled "response" that purported to answer Weltman's L.R. 7056-1 statement of facts.  In the response, Hakalir admitted some facts and denied others – but he cited no evidence to support his denials, as the local rules require.  *See* L.R. 7956-2(A)(2)(a).  Without evidentiary support, the denials would constitute admissions.  *Chuipek v. Gilmore (In re Gilmore)*, 590 B.R. 819, 832 (Bankr. N.D. Ill. 2018); *Maxwell*, 2010 WL 4027723, at *2 ("Facts denied without evidence to support the denial are admitted.").  So ordinarily Hakalir would have admitted all of Weltman's facts.

Ordinarily, but not here.  Hakalir is not a lawyer and is pro se.  Because he is pro se, he had a right to receive the notice under Local Rule 7056-3 giving unrepresented parties a plain-English explanation of summary judgment procedure.  *See* L.R. 7056-3; *see also Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982).  Weltman served Hakalir with a notice, but the notice was the one prescribed in the district court's local rule (L.R. 56.2), not the bankruptcy court's local rule.  (Dkt. No. 50).  Weltman later corrected the error and served the notice under L.R. 7056-3.  (Dkt. No. 55).

Both times, though, Weltman served the notice improperly.  Service had to comply with

-4-

Rule 5 of the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P.  5(a)(1)(E) (stating that the service requirements of Rule 5 apply to "a written notice") (made applicable by Fed. R. Bankr. P. 7005).  Rule 5 allows for service to a registered user of the court's electronic-filing system or "by other electronic means that the person consented to in writing."  Fed. R. Civ. P. 5(b)(2)(E). Weltman served Hakalir with the L.R. 7056-3 notice by email.  Hakalir is not a registered user of the court's CM/ECF system, and nothing in the record shows he consented in writing to email service.  Service of the notice by email was therefore invalid.  It was as if Weltman had never served Hakalir with the notice at all.

Granted, failing to give a L.R. 7056-3 notice is not always fatal.  Summary judgment need be denied only if the failure was prejudicial.  *Timms*, 953 F.2d at 286.  Here, though, it was. Had Hakalir supported his denials of Weltman's facts with evidence, the denials would have produced factual issues for trial.  For example, Weltman said that in deciding to lend Jordan money he relied on certain representations Hakalir made.  Hakalir denied making most of them (L.R. 7056-2(A) Response ¶¶ 13(b), (d), (g)) and denied making another with fraudulent intent (*id.* ¶ 13(d)).  Because Hakalir is pro se, he evidently failed to realize he had to support his denials.  (A simple verification would have done the trick.)  That was prejudicial.  *See Dirig v. Wilson*, 609 F. App'x 857, 860-61 (7th Cir. 2015) (vacating summary judgment when the plaintiff was not served with the notice and had "alleged facts that, if sworn, would have created disputed issues of material fact").

Because Weltman failed to serve the required L.R. 7056-3 notice properly and the failure was prejudicial, his motion for summary judgment must be denied.

**B. Service of the Request for Admissions**

Weltman's motion would have to be denied even if he had given Hakalir the required notice. Weltman failed to meet his burden to show no factual issues for trial – again, because of a service problem.

Weltman supports his motion largely with facts he says Hakalir admitted by default when he failed to answer Weltman's Rule 36 request to admit, Fed. R. Civ. P. 36 (made applicable by Fed. R. Bankr. P. 7036)). That is, of course, an acceptable way to support a summary judgment motion. The recipient of a Rule 36 request typically has 30 days to respond; if he does not, he admits the facts asserted in the request. Fed. R. Civ. P. 36(a)(3). The resulting admissions "conclusively establish[ ]" the facts, unless the defaulting party seeks and receives leave to withdraw the admissions. Fed. R. Civ. P. 36(b). The admissions can "serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Weltman served Hakalir with a request to admit, Hakalir did not answer it, and Hakalir has never asked to withdraw the resulting admissions.

Again, though, the problem lies in the way Weltman accomplished service. Weltman served the request by email (L.R. 7056-2(A) Response ¶ 9), just as he did the L.R. 7056-3 notice. Service of requests to admit facts also must comply with Rule 5. *See* Fed. R. Civ. P. 5(a)(1)(C) (stating that the service requirements of Rule 5 apply to "a discovery paper required to be served on a party"). Because Hakalir had not consented in writing to email service, Weltman's service of the request by email was improper. *See Freeman v. City of Detroit*, No. 09-cv-13184, 2011 WL 1298174, at *2 (E.D. Mich. Apr. 5, 2011).[1/] The request was "void, and no response was

---

[1/] This is so even though Hakalir concedes that Weltman served him with the request. (L.R. 7056-2(A) Response ¶¶ 9-10). Consent to email service must be "express" and "cannot be implied from conduct." Fed. R. Civ. P. 5 advisory committee's note (2001).

-6-

necessary." *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 228 (S.D.N.Y. 2012). Hakalir therefore admitted nothing when he failed to respond. *Thomas v. Anderson*, No. 1:12-cv-1343, 2020 WL 1042517, at *2 (C.D. Ill. Mar. 4, 2020) ("Failure to properly serve a request for admission prevents the failure to respond from being deemed an admission.").[2]

Because Weltman did not serve his Rule 36 request to admit properly, he cannot use the facts he asserted in it to meet his burden of proof. So the summary judgment motion would have to be denied even if the facts warranted judgment in his favor.

## C. Substantive Problems

As it happens, though, they do not. Even if Weltman had supported all the facts in his L.R. 7056-1(A) Statement and Hakalir had not disputed them, they would not entitle Weltman to judgment on any of his claims.

## 1. Weltman's Facts

The statement sets out these facts. Hakalir lived in Lake County, Illinois (L.R. 7056-1(A) Statement ¶ 2) and was the sole shareholder and president of Jordan Equity Group, Inc. (*id.* ¶ 3; *see also* Compl. ¶¶ 11, 12; Ans. ¶¶ 11, 12). Hakalir's brother, Evan, lived in New York and was the majority shareholder of Evan and Andy Industries, Inc. ("A&E"). (L.R. 7056-1(A) Statement ¶¶ 4, 5). Weltman lived in Florida. (*Id.* ¶ 1).

In late 2016, a mutual acquaintance introduced Hakalir to Weltman during a telephone

---

[2]   It might be argued that Hakalir forfeited an objection to the method of service because he never complained about it. But since improper service made the request to admit void, Hakalir did not have to object. *Thomas*, 2020 WL 1042517, at *2 (finding that "[d]efendants did not fail to timely object [to improper email service] because they had no duty to object").

call.  (Compl. ¶ 19; Ans. ¶ 19).  In that call, and perhaps in later ones as well, Hakalir told Weltman that he was part owner of A&E.  (L.R. 7056-1(A) Statement ¶ 13(b)).  He also told Weltman that he was successful and experienced in raising capital, and he gave Weltman an article attesting to his proficiency and experience in that area.  (*Id.* ¶ 13(c)).  Hakalir's purpose in giving Weltman the article was to induce Weltman to lend him money.  (*Id.* ¶ 13(d)).

In late August 2017, Hakalir asked Weltman to lend him $65,000.  (*Id.* ¶ 13(e).  He said he needed the loan so that A&E could buy a license for a line of children's clothing and Jordan could buy an option to participate in a real estate venture.  (*Id.*).  Hakalir promised to provide Weltman with "various documents and statements" related to the real estate venture.  (*Id.* ¶ 13(f)).

Hakalir also told Weltman he could repay the loan.  (*Id.* ¶ 13(g)).  To convince Weltman he could, Hakalir told Weltman he owned a personal residence, shares of A&E stock, an insurance agency, and a right to share in the profits of the clothing license.  (*Id.*).  He also said he owned "financial assets . . . by and through" Jordan.  (*Id.*).

Two days later, relying on Hakalir's representations, Weltman entered into a loan agreement with Jordan.  (*Id.* ¶¶ 13(h), (i)).  Jordan signed a promissory note for $65,000, and Hakalir signed an agreement personally guaranteeing repayment of the loan.  (*Id.* ¶ 13(i)).  The same day, Weltman wired Jordan the loan amount.  (*Id*. ¶ 13(j)).

Within a week, rather than use the loan proceeds to pay for the clothing license or real estate venture Jordan sent $60,000 of it to Hakalir's brother Evan.  (*Id.* ¶ 13(k)).  According to Weltman, A&E had been "the intended beneficiary" of the loan all along.  (*Id.* ¶ 13(b)).

Neither Jordan nor Hakalir ever repaid the loan.  (*Id.* ¶ 13(l)).

In 2019, Hakalir filed a chapter 7 bankruptcy case, and Weltman responded with this

adversary proceeding.  Weltman's complaint has three counts.  Count I alleges that Hakalir's debt is one for money obtained by false pretenses or a false representation and so is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).  Count II alleges that the debt is nondischargeable under section 523(a)(4), 11 U.S.C. § 523(a)(4), either because Hakalir embezzled the loan proceeds, or because he committed fraud or defalcation while acting in a fiduciary capacity.  Count III alleges that the debt is one for willful and malicious injury and so is nondischargeable under section 523(a)(6), 11 U.S.C. § 523(a)(6).

### 2.  Weltman's Claims

Assuming these facts were supported and undisputed, they would not prove Weltman's section 523(a)(2)(A) claim.  Nor would they prove his section 523(a)(4) and section 523(a)(6) claims.

### a.  The Section 523(a)(2)(A) Claim

Weltman comes closest to meeting his burden of proof on his section 523(a)(2)(A) claim in Count I.

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  Although some courts have applied a single test for determining nondischargeability under section 523(a)(2)(A), that section describes three separate grounds for holding a debt to be nondischargeable:  false pretenses, false representation, and actual fraud.  *Groom v. Krook (In re Krook)*, 615 B.R. 479, 484 (Bankr. N.D. Ill. 2020).

Weltman says his claim is based on false representations and false pretenses.  To prevail

-9-

on such a claim, a creditor must prove that the debtor owes a debt resulting from a false representation or omission of fact, a representation the debtor either knew was false or made with reckless disregard for its truth.[3/] *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010). The creditor must show that the debtor made the representation with an intent to deceive, and the creditor justifiably relied on the representation. *Ojeda*, 599 F.3d at 716-17.

But not all false representations will make out a claim under section 523(a)(2)(A). Two in particular will not. The first is a false promise. To be actionable under section 523(a)(2)(A), a false representation must ordinarily relate to a "present or past fact." *Krook*, 615 B.R. at 485 (internal quotation omitted). So a broken promise – a promise to repay a loan, for example – will not usually support a section 523(a)(2)(A) claim. *Rezin v. Barr* (*In re Barr*), 194 B.R. 1009, 1017-18 (Bankr. N.D. Ill. 1996). A broken promise will be actionable only if the debtor made the promise never intending to keep it. *Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999); *Handler v. Moore (In re Moore)*, 620 B.R. 617, 629 (Bankr. N.D. Ill. 2020).

The second is an oral misrepresentation of the debtor's financial condition. Statements about a debtor's financial condition, even false ones, are not actionable under section 523(a)(2)(A). *Lamar, Archer & Cofrin, LLP v. Appling*, ___ U.S. ___, 138 S. Ct. 1752, 1757 (2018). The reason stems from the interaction of sections 523(a)(2)(A) and (B). Section 523(a)(2)(A) makes nondischargeable a debt resulting from false pretenses, a false representation, or actual fraud – "other than a statement respecting the debtor's . . . financial

---

[3/]    A creditor claiming false pretenses can satisfy the false representation element by proving the debtor "concealed a material fact." *Chicago Patrolmen's Fed. Credit Union v. Fenner (In re Fenner)*, 558 B.R. 877, 884 (Bankr. N.D. Ill. 2016). "A fact is material if the circumstances imply a specific set of facts and disclosure [of that fact] is necessary to correct what would otherwise be a false impression." *Id.* (internal quotation omitted).

condition." 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(B), in turn, makes nondischargeable a debt resulting from materially false statements "respecting the debtor's . . . financial condition" – but only if the statement is "in writing." 11 U.S.C. § 523(a)(2)(B). Together, these provisions leave a gap: debts for money obtained by a false *oral* statement about a debtor's *financial condition* are discharged. *See Stelmokas v. Kodzius*, 460 F. App'x 600, 603 (7th Cir. 2012).

The facts Weltman supplies show only that Hakalir owes Weltman a debt, and the debt is for money obtained by representations on which Weltman justifiably relied. The claim falls apart when it comes to the representations themselves and the intent behind them. Hakalir represented that he had experience at raising capital, but Weltman has not shown that the representation was false – a *mis*representation. Hakalir said he would use the loan proceeds for a clothing license and a real estate venture, and he said he would give Weltman documents about the venture, but no facts show he made either promise not intending to keep it.[4] (For that matter, no facts show that the representation about the documents was false, that Hakalir did not give them to Weltman.) The same goes for Hakalir's promise to repay the loan: no facts show he promised to repay it but never intended to do so. As for Hakalir's representations about his ability to repay the loan, no facts show those representations were false when he made them. Even if they were, they were statements of Hakalir's financial condition and so cannot support a section 523(a)(2)(A) claim.

---

[4]    The single week between Jordan's receiving the loan proceeds and Hakalir's sending them to Evan might support an inference of intent. *See CR Adventures LLC v. Hughes (In re Hughes)*, 609 B.R. 789, 803 (Bankr. N.D. Ill. 2019) (noting that intent can be proved inferentially from the totality of the circumstances), *appeal pending*, No. 20 C 4605 (N.D. Ill.). But Weltman has not argued for that inference. Even if he had, inferences on summary judgment are drawn in favor of the non-movant. *Joll*, 953 F.3d at 928. Since the one-week interval could but need not support an inference of fraudulent intent, the inference must be drawn that Hakalir had no such intent.

Because the facts show only representations that were not false or false promises with no fraudulent intent, Weltman is not entitled to summary judgment on his section 523(a)(2)(A) claim.

### b.  The Section 523(a)(4) Claim

Weltman also is not entitled to summary judgment on his section 523(a)(4) claim in Count II.

Section 523(a)(4) excepts from discharge debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).  The provision applies to three distinct kinds of conduct.  *Duggins v. Bratt (In re Bratt)*, 491 B.R. 572, 575 (Bankr. D. Kan. 2013); *see also Shriners Hosp. for Children v. Bauman (In re Bauman)*, 461 B.R. 34, 44 (Bankr. N.D. Ill. 2011).  Weltman pins his claim on two: (1) fraud or defalcation while acting in a fiduciary capacity and (2) embezzlement.

### i.  Fiduciary Capacity Claim

Weltman's facts do not make out a fiduciary capacity claim because they do not show that Hakalir was Weltman's fiduciary.

To prove a fiduciary capacity claim under section 523(a)(4), a creditor must show "(1) the debtor acted as a fiduciary to the creditor at the time the debt was created, and (2) the debt was caused by fraud or defalcation." *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016) (internal quotations omitted).  Whether the debtor was a fiduciary is a matter of federal bankruptcy law, not substantive state or federal law.  *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767 (7th Cir. 2011); *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003).  In this circuit, "fiduciary" is construed narrowly.  *Hughes*, 609 B.R. at 800.  A

-12-

fiduciary relationship under section 523(a)(4) arises in just two circumstances: "(1) when there is an express trust, and  (2) when there is an implied fiduciary relationship." *Berman* 629 F.3d at 768-70.

To prove a fiduciary relationship from an express trust, the creditor must show (1) a "clear intent to create a trust," and (2) the "hallmarks of a trust." *Id.* at 769.  Hallmarks include "segregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most bare legal title to them." *Id.* (internal quotation omitted).  To prove an implied fiduciary relationship, the creditor must show the relationship involved a "special confidence." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994).  That confidence exists when the relationship is unequal, when there is "a difference in knowledge or power between fiduciary and principal" that gives "the former a position of ascendancy over the latter. *Id.*

No facts show that Hakalir was somehow Weltman's fiduciary.  No facts suggest that the relationship between the two men involved an express trust, nor do the facts show any "special confidence," any "difference in knowledge or power," that would have given Hakalir "a position of ascendancy" over Weltman.  *Id.*  To the contrary, the facts show only an ordinary commercial relationship that led to a breach of contract.  Hakalir's company entered into a loan agreement with Weltman, Hakalir guaranteed the debt, Hakalir misapplied the loan proceeds, and neither he nor his company repaid the loan.  Ordinary commercial relationships like this are not fiduciary ones under section 523(a)(4).  *Berman*, 629 F.3d at 771; *Hughes*, 609 B.R. at 798.

### ii.  Embezzlement

Weltman fares no better with his embezzlement claim.  Weltman's facts fail to show embezzlement.

-13-

Embezzlement under section 523(a)(4) means the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (internal quotation omitted). To prove embezzlement, the creditor must show that the debtor appropriated the creditor's property for his own benefit and did so with fraudulent intent or deceit. *Krook*, 615 B.R. at 485. Fraudulent intent means simply the debtor's knowledge that he had no right to use the property. *Id.*

The facts do not show embezzlement because they do not show that Weltman "entrusted" property to Hakalir that he then "appropriated." Weltman lent money to Jordan, Hakalir's company. Lending money is not "entrusting" it. *Tavadia Enters., Inc. v. Mitchell (In re Mitchell)*, 618 B.R. 199, 210 (Bankr. W.D. Ky. 2020) (stating that lending funds "is generally insufficient to establish that funds were 'entrusted' to th[e] debtor"). Once lent, moreover, the money belonged to Jordan. *See JP Morgan Chase Bank, NA v. Algire (In re Algire)*, 430 B.R. 817, 822 (Bankr. S.D. Ohio 2010). Putting aside that Weltman made the loan to Jordan, not Hakalir, it is impossible to embezzle one's own property. *Zamora v. Jacobs (In re Jacobs)*, 403 B.R. 565, 575 (Bankr. N.D. Ill. 2009). The facts here show only that Jordan and Hakalir failed to repay the loan. Failing to repay a loan is not embezzlement. *Lenox Pines, LLC v. Smith (In re Smith)*, Nos. 17-67324-LRC, 18-05005-LRC, 2021 WL 1234245, at *11 (Bankr. N.D. Ga. Mar. 31, 2021).

Because the facts show neither a fiduciary relationship nor embezzlement, Weltman is not entitled to summary judgment on his section 523(a)(4) claim.

### c. The Section 523(a)(6) Claim

Finally, Weltman is not entitled to summary judgment on his section 523(a)(6) claim, either. Again, the facts he has assembled establish at most a breach of contract, not the kind of

-14-

tortious conduct section 523(a)(6) concerns.

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To prove the claim, a creditor must show that (1) the debtor owes a debt resulting from an injury he caused to another entity or that entity's property; (2) his actions were willful; and (3) his actions were malicious. *Krook*, 615 B.R. at 487. An act is "malicious" if the debtor acted in "conscious disregard of [his] duties or without just cause or excuse." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 775 (7th Cir. 2013) (internal quotation omitted). An act is "willful" if the debtor intended both the act itself and the resulting injury – "the consequences of [the] act." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).

As its language suggests, section 523(a)(6) excepts from discharge debts resulting from intentional torts. *Kawaauhau*, 523 U.S. at 58. Fraud is an intentional tort and will support a section 523(a)(6) claim. *Krook*, 615 B.R. at 487. So will embezzlement. *Id.* Had Weltman proved fraud or embezzlement, he would have proved a debt for a willful and malicious injury. But he has proved neither. The facts show only a breach of contract, and a simple breach of contract will not make out a section 523(a)(6) claim. *Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011); *see also United Providers, Inc. v. Pagan (In re Pagan)*, 564 B.R. 324, 326 (Bankr. N.D. Ill. 2017) (noting that even an intentional breach of contract "is not enough to support a claim under section 523(a)(6)").

Because Weltman's facts do not show any independent tortious conduct on Hakalir's part, Weltman is not entitled to summary judgment on his section 523(a)(6) claim.

-15-

## IV.  Conclusion

The motion of plaintiff Louis Weltman for summary judgment on his adversary complaint against defendant Jacob Hakalir is denied.  A separate order will be entered consistent with this opinion.

Dated: July 26, 2021

_____

A. Benjamin Goldgar
United States Bankruptcy Judge